IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GERALYNN M.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

No. 6:21-cv-00840-HZ

OPINION & ORDER

Kevin Kerr
Kerr Robichaux & Carroll
PO Box 14490
Portland, OR 97293

    Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Jeffrey E. Staples
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Geralynn M. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on April 30, 2018, alleging a disability onset date of August 6, 2017. Tr. 194, 201.[2] Plaintiff's date last insured ("DLI") is December 31, 2022. Tr. 218. Her application was denied initially and on reconsideration. Tr. 101-104.

On August 5, 2020, Plaintiff appeared with counsel for a hearing by telephone before an Administrative Law Judge ("ALJ"). Tr. 43-72. On September 16, 2020, the ALJ found Plaintiff not disabled. Tr. 35.  The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on carpal tunnel syndrome, degenerative disk disease, anxiety, depression, anemia, nerve pain, thyroid disorder, fibromyalgia, panic attacks, and

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 12.

2 – OPINION & ORDER

chronic pain. Tr. 222. At the time of her alleged onset date, she was forty-four years old. Tr. 218. She has at least a high school education and past relevant work experience as a cashier checker. Tr. 32.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 18. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "degenerative disc disease of the cervical and lumbar spine; bilateral carpel tunnel syndrome status post left release surgery; goiter; bipolar disorder and a learning disorder[.]" Tr. 18. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> she can occasionally climb ramps and stairs and never climb ladders, ropes, and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally reach overhead bilaterally and can frequently handle and finger bilaterally. She can perform simple routine tasks and can perform work involving only occasional changes in the work routine and setting. She should avoid concentrated exposure to work hazards, such as moving machinery and unprotected heights.

4 – OPINION & ORDER

Tr. 22. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 32. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as electrical accessories assembler, hand packager/inserter, and production assembler. Tr. 34. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 34.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff asserts that the ALJ erred by (1) failing to include fibromyalgia, inflammatory bowel disease, and migraine headaches as severe medically determinable impairments at step two; (2) failing to conduct an adequate analysis at step three; (3) rejecting Plaintiff's testimony

about the severity of her symptoms; (4) rejecting the medical opinion of her treating medical provider, Theresa Curran, P.A.-C.; and (5) conducting an inadequate analysis at step five. Pl. Brief 7, ECF 14.

## I.  Severe Medically Determinable Impairments at Step Two

At step two, the ALJ determined that Plaintiff has several medically determinable impairments that "significantly limit the ability to perform basic work activities," including degenerative disc disease of the cervical and lumbar spine, carpal tunnel syndrome, goiter, bipolar disorder, and learning disorder. Tr. 18. Plaintiff claims that the ALJ erred by declining to also include fibromyalgia, inflammatory bowel disease,[3] and migraine headaches as severe medically determinable impairments.

An ALJ's analysis of whether a claimant has a severe medically determinable impairment at step two is "merely a threshold determination to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017); *see Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)) ("Step two . . . is a de minimis screening device used to dispose of groundless claims") (brackets omitted). A reviewing court must determine whether the ALJ's conclusion that a claimant's alleged impairment is not medically severe was based on substantial evidence.[4]

---

[3] Although Plaintiff refers to her gastrointestinal disorder as inflammatory bowel disease ("IBD"), her treating medical provider reported her condition as "IBS" or irritable bowel syndrome. Tr. 2276. In February 2019, a gastroenterology specialist noted "[p]atient's symptoms sound less consistent with IBD colitis (imaging and leukocytosis likely infectious)[.]" Tr. 1999.

[4] Most step two errors are harmless so long as the ALJ found at least one severe medically determinable impairment, the sequential process proceeded to step three, and the ALJ considered all of the medically determinable impairments, severe and non-severe, in formulating the claimant's residual functional capacity. *Buck*, 869 F.3d at 1049.

Along with finding that Plaintiff has several severe medically determinable impairments, the ALJ concluded that Plaintiff has the following non-severe impairments: "gastrointestinal conditions, headaches, shoulder pain, and leg edema/cellulitis." Tr. 18. Plaintiff claims the ALJ "erred by neglecting to consider [her] inflammatory bowel and migraine headaches at step two." Pl. Brief 13. As noted, the ALJ expressly acknowledged that there is objective evidence in the medical record of Plaintiff's "gastrointestinal conditions" and headaches. Tr. 18. But he determined these conditions were non-severe because they were being managed effectively and did not cause any ongoing functional limitations.

An impairment may be found not severe "only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb*, 433 F.3d at 686 (quoting *Smolen*, 80 F.3d at 1290); see *Yuckert*, 841 F.2d at 306 (citing SSR 85-28) ("[A]n impairment is found not severe . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."). As for her gastrointestinal conditions, Plaintiff has a history of gastroesophageal reflux disease ("GERD"), constipation, and irritable bowel syndrome. The ALJ described the evidence establishing Plaintiff's GERD and her history of *H. pylori* infection.[5] Tr. 18, 1905. He noted that Plaintiff had a recent negative *H. pylori* test and was treated with medication to control her GERD. Tr. 18, 1911. The ALJ described the evaluations performed for irritable bowel syndrome and constipation. Imaging studies showed possible acute colitis, but a colonoscopy in May 2020 showed no diagnostic abnormalities, including no signs of colitis, no dysplasia, and no malignancy. Tr. 18, 1976, 1993.

---

[5] Helicobacter pylori ("*H. pylori*") is a type of bacteria that colonizes the stomach and intestines, causing ulcers and GERD. Helicobacter Pylori, Stedman's Medical Dictionary (28th ed. 2013).

As to Plaintiff's migraine headaches, the ALJ noted that Plaintiff had worsening headaches in December 2019, followed by improvement in January 2020. Tr. 18, 1974, 2086. Although he did not specifically discuss her migraines further, the record shows that Plaintiff had received no treatment other than medication as needed. Tr. 2025. Plaintiff argues that a brain MRI in February 2020 showing "white matter changes" confirmed her diagnosis of migraine headaches.[6] Pl. Brief 13; Tr. 2271. But the ALJ did not deny that Plaintiff's migraine headaches are a medically determinable impairment—rather, he concluded that her headaches were not a *severe* impairment because they were controlled without aggressive treatment and did not cause Plaintiff any ongoing functional limitations. Notes from follow-up appointments with her medical provider in February 2020 and April 2020 make no mention of headache symptoms. Tr. 2111-2119, 2121-2128. Thus, the Court finds that the ALJ did not err because he specifically acknowledged Plaintiff's gastrointestinal conditions and migraine headaches, specifically addressed them, and adequately explained why he found them to be non-severe.

The ALJ declined to consider Plaintiff's reported fibromyalgia to be a medically determinable impairment because he concluded that the medical evidence does not support such a diagnosis. The ALJ determined that no specific evidence in Plaintiff's record established that her signs and symptoms met the criteria required by Social Security Ruling ("SSR") 12-2p to diagnosis fibromyalgia.

---

[6] Plaintiff overstates the findings on her February 12, 2021 Brain MRI. Regarding white matter changes, the report describes "[m]inimal white matter changes that appear similar to 2/14/2017. While very nonspecific, common differential considerations include chronic angiopathic change, changes related to migraine headaches, prior trauma, demyelination, and other remote insults including infection." Tr. 2271. Thus, rather than confirming her diagnosis of migraine headaches, the report suggests migraine headaches are one potential cause of the white matter changes.

8 – OPINION & ORDER

Fibromyalgia is a rheumatic disease characterized by "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). The cause of fibromyalgia is unknown, and "the condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (internal quotation marks omitted). There are no laboratory tests to confirm the diagnosis. *Id.* SSR 12-2p provides two sets of criteria for diagnosing fibromyalgia. The first criteria are (1) widespread pain that has lasted at least three months (though the degree of pain can wax and wane); (2) tenderness in at least eleven of eighteen trigger points; and (3) evidence that other disorders that could account for the pain were excluded. *Revels*, 874 F.3d at 656-67 (citing SSR 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012)).[7] The second criteria are (1) widespread pain that has lasted at least three months; (2) six or more fibromyalgia symptoms, signs, or co-occurring conditions such as fatigue, cognitive or memory problems, depression, anxiety disorder, or irritable bowel syndrome; (3) evidence that other disorders that could cause the pain were excluded. *Id.* at 657 (citing SSR 12-2p, 2012 WL 3104869, at *3).[8]

Plaintiff claims that the ALJ erred by not considering her multiple years of body wide pain, her ongoing treatment with pain medication, and her positive findings on tender point examination to be diagnostic of fibromyalgia. Plaintiff asserts that her condition meets the first set of criteria under SSR 12-2p. The ALJ specifically concluded that Plaintiff's medical evidence was inconsistent with the SSR 12-2p requirements. The ALJ determined that a physician's

---

[7] These criteria are based on the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia. SSR 12-2p, 2012 WL 3104869, at *2.
[8] These criteria are based on the 2010 American College of Rheumatology Preliminary Diagnostic Criteria. SSR 12-2p, 2012 WL 3104869, at *3.

9 – OPINION & ORDER

assistant exam finding that "all tender spots as would be [consistent with] fibromyalgia" was insufficient because the report did not specify the actual number of tender spots that were examined and found to be positive. Tr. 19, 1964. In addition, the ALJ concluded that the record does not exclude other disorders that could cause the symptoms or signs that Plaintiff attributes to fibromyalgia.

The Court finds that the ALJ provided adequate reasoning for his decision to exclude fibromyalgia as a medically determinable impairment. The ALJ explicitly addressed the trigger point examination by Plaintiff's treating provider and reasonably found that it lacked enough specificity to meet the SSR 12-2p requirements to diagnose fibromyalgia. Thus, the Court finds that ALJ committed no legal error in excluding fibromyalgia, gastrointestinal conditions, or migraine headaches at step two.

II.    **Analysis at Step Three**

At step three, an ALJ determines whether any of a claimant's medically determinable impairments are so severe that they meet or medically equally one of the Social Security Administration's listings of presumptively disabling impairments. 20 C.F.R. §§ 404.1520(d), 416.920(d). Such a finding establishes that the claimant has a disability and ends the five-step inquiry. *Yuckert*, 482 U.S. at 141. In order to meet or equal a listing, a claimant's medical condition must satisfy all of the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). "Listed impairments are purposely set at a high level of severity because the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).

Plaintiff claims the ALJ made three errors at step three. First, Plaintiff argues that the ALJ committed harmful error by "failing to consider Listing 14.09D for fibromyalgia." Pl. Brief 13. However, a claimant's alleged condition must first be considered a medically determinable impairment at step two for that condition to meet or medically equal a listed impairment at step three. See 20 C.F.R. §§ 404.1525(d), 416.920(d) ("To meet the requirements of a listing, you must have a *medically determinable impairment(s)* that satisfies all of the criteria in the listing.") (emphasis added). At step two, the ALJ reasonably determined that the medical evidence did not establish fibromyalgia as a medically determinable impairment. Thus, the ALJ had no reason to consider whether Plaintiff's alleged impairment from fibromyalgia met or medically equaled a listed impairment at step three.

Second, Plaintiff claims that the ALJ "mischaracterized the record" regarding Plaintiff's degenerative disc disease at L5-S1, which caused him to find that Plaintiff's impairment did not meet the criteria for "Listing 1.04." Pl. Brief 14. Listing 1.04 for disorders of the spine requires "compromise of a nerve root." 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ determined that the "record is devoid of such evidence" of nerve root compromise. Tr. 19. Plaintiff asserts that in making this finding, the ALJ disregarded a September 2017 MRI finding that showed Plaintiff's degenerative disc disease at L5-S1 resulted in "mass effect on the left S1 nerve root." Pl. Brief 14; Tr. 486. Plaintiff argues that mass effect on a nerve root "can be indicative of nerve root compression." Pl. Brief 14 (citing *Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015).[9]

---

[9] *Minnick* is distinguishable. In rejecting the ALJ's finding that the claimant's spinal disorder did not meet Listing 1.04, the Seventh Circuit in *Minnick* held that "[p]aired with [claimant's] testimony that his pain limited his ability to use his fingers (motor loss accompanied by reflex loss) and the positive straight leg tests, [claimant's] degenerative disc disease may very well have satisfied Listing 1.04." 775 F.3d at 936. Whereas here, the ALJ found that Plaintiff had "no motor loss, muscle weakness, sensory or reflex loss" to go along with her MRI findings. Tr. 19.

11 – OPINION & ORDER

But along with imaging findings, Listing 1.04 requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raise test[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found no evidence of "motor loss, muscle weakness, sensory or reflex loss" in the record. Tr. 19. For example, the physical exam performed by a pain care specialist in September 2019 showed a negative straight leg raise test and 5/5 strength in both legs. Tr. 1769. Because the ALJ's conclusion is consistent with the record, he did not err in finding that Plaintiff's spinal disorder did not satisfy the requirements of a listed impairment.

Third, Plaintiff asserts that ALJ disregarded the combined effects of her impairments. Plaintiff is correct that an ALJ must consider the combined symptoms of a claimant's medically determinable impairments at step three. *Ford v. Saul*, 950 F.3d 1141, 1157 (9th Cir. 2020). But a claimant bears the burden of showing how a combination of impairments meets or equals a listed impairment. *See Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."). Plaintiff does not indicate which combination of impairments and related symptoms she believes equal a specific listed impairment. Because Plaintiff provides no theory as to how the ALJ erred, she does not meet her burden of proof. Accordingly, the Court finds no error at step three.

### III. Plaintiff's Subjective Symptom Testimony

An ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons") (quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195

(9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff argues that the ALJ committed legal error in determining that the record does not support the intensity or severity of her alleged disabling symptoms. At the first step of the analysis, the ALJ determined that Plaintiff's degenerative disc disease, carpal tunnel syndrome, goiter, bipolar disorder, and learning disorder could reasonably be expected to cause her alleged symptoms. But at the second step, the ALJ rejected Plaintiff's claims regarding the intensity, persistence, and limiting effects of her symptoms. Tr. 30. The ALJ reasoned that the "objective medical evidence does not show that the [Plaintiff's] symptoms are as limiting as she alleges." Tr. 30.

The ALJ provided a thorough summary of Plaintiff's medical treatment records from December 2016 to June 2020. Tr. 23-26. The ALJ described several of Plaintiff's conditions that required treatment, including cervical and lumbosacral radiculopathy, enlarging goiter, palpable cervical and trapezius muscle spasm, right upper limb pain and paresthesia, and right hand volar synovitis. The ALJ acknowledged that Plaintiff reported ongoing pain during multiple clinic visits and noted that the medical record supports some limitations due to her bilateral carpal tunnel syndrome, degenerative disc disease, and goiter. As to Plaintiff's mental health diagnoses, the ALJ described Plaintiff's limitations from bipolar disorder and learning disorder and summarized the effect of treatment.

However, in determining that her symptoms were not as limiting as Plaintiff alleges, the ALJ pointed to Plaintiff's successful treatment for left carpal tunnel syndrome and noted that the same treatment was planned for the right side. The ALJ stated that Plaintiff's goiter had

improved such that she no longer had neck pain. Regarding her mental health symptoms, the ALJ relied on both Plaintiff's report that medications worked well to improve her mood and her treating provider's statement that Plaintiff's bipolar disorder was stable. Tr. 29, 1904, 1910. The ALJ concluded that Plaintiff's mostly normal mental status examinations as well as her good insight and judgment established that her mental health symptoms were not as disabling as she alleged.

But the ALJ's explanation is insufficient. Along with providing a detailed summary of the facts in the record, "[an] ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. To reject a claimant's symptom testimony, an ALJ must provide reasons that are "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony[.]" *Brown-Hunter*, 806 F.3d at 493 (internal quotation and citation omitted). Here, despite summarizing Plaintiff's physical and mental health conditions in some detail, the ALJ failed to adequately explain why he determined that the objective evidence did not support Plaintiff's alleged degree of limitation. Specifically, the ALJ neglected to explain why Plaintiff's degree of pain and resulting limitations were inconsistent with the objective findings of her cervical and lumbar spine degenerative disc disease. Thus, the ALJ did not provide clear and convincing reasons for his conclusion that the objective medical findings "fail to provide strong support for [Plaintiff's] allegations of disabling symptoms and limitations." Tr. 23.

Nevertheless, the ALJ did not err in rejecting Plaintiff's subjective symptoms testimony. The ALJ reasonably determined that Plaintiff's described daily activities contradict the severity of her alleged disabling symptoms and limitations. An ALJ may reject symptom allegations that are inconsistent with a claimant's ability to perform normal activities of daily living ("ADLs").

*See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Even when a claimant describes some limitations in ADLs, an ALJ does not err by making a non-disability finding if the claimant's daily activities suggest that they are relatively functional. *Burch*, 400 F.3d at 680. The ALJ specifically addressed Plaintiff's alleged limitations, including her claim that she has "bad days once or twice a week or even up to five days per week" when she "[cannot] get off the couch." Tr. 23. The ALJ then determined that Plaintiff's symptoms were "not as limiting as she alleges." Tr. 30. The ALJ noted:

> [Plaintiff] has no problems bathing, shaving, feeding herself, or using the toilet. She is able to prepare simple meals. She cleans and does laundry. She goes outside daily. She is able to use public transportation . . . [and] she is able to shop in stores for food and household items. She can handle money. . . [and] she reported that she was able to provide care for four children.

Tr. 30.

The ALJ is responsible for determining the credibility of Plaintiff's symptom testimony, and the Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court finds that the ALJ reasonably determined that Plaintiff's daily activities suggest that she is more functional than she claims to be. *See Burch*, 400 F.3d at 680 (upholding the ALJ's rejection of the plaintiff's alleged degree of limitation from back pain, depression, and fatigue because she was able to care for her own personal needs, cook, clean, shop, and manage her own finances). Even, as here, when a claimant's ADLs suggest some difficulty functioning, those activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally disabling impairment." *Molina*, 674 F.3d at 1113.

The Court finds that the ALJ provided clear and convincing reasons to find Plaintiff's ADLs did not support her alleged symptom severity. Thus, despite failing to adequately explain

why the objective medical evidence does not support Plaintiff's alleged limitations, the ALJ did not err in finding that the degree of Plaintiff's asserted limitations are not entirely consistent with the record.

## IV.     Medical Opinion Evidence

Plaintiff asserts that the ALJ improperly rejected the opinion of her treating physician's assistant, Theresa Curran, PA-C. Ms. Curran provided a medical source statement summarizing Plaintiff's limiting conditions and symptoms, in which she concluded that (1) Plaintiff could not be expected to perform even simple tasks 10-20% of the time and (2) Plaintiff's symptoms and follow up appointments would cause her to miss two or more workdays per month. Tr. 2276. The ALJ found this medical opinion not persuasive. Tr. 32.

New regulations about weighing medical opinion evidence apply to claims filed on or after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record

17 – OPINION & ORDER

. . . but are not exactly the same," the ALJ is required to explain to how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The ALJ noted that Ms. Curran supported her opinion with her own observations of Plaintiff's pain from her lumbar and cervical degenerative disc disease. The ALJ then made the conclusory statement that the "record supports a lesser degree of restriction" than provided by Ms. Curran. Tr. 32. As an example, the ALJ described a mental status examination in January 2020 showing that Plaintiff had a normal mood and affect and no psychomotor retardation. But the ALJ pointed to nothing else in the medical record that undermines Ms. Curran's opinion, and he failed to explain how the one mental status examination is relevant to Ms. Curran's conclusions about Plaintiff's limitations due to pain.

"Where the evidence can reasonably support either affirming or reversing a decision, [a court] must not substitute [its] judgment for that of the ALJ." *Garrison*, 759 F.3d at 1010. But "[t]he ALJ must do more than offer [their] conclusions . . . [they] must set forth [their] own interpretation and explain why they, rather than the doctors, are correct." *Reddick*, 157 F.3d at 725. An ALJ must consider the medical record as a whole, set out "a detailed and thorough summary of the facts and conflicting evidence," and state their interpretation. *Garrison*, 759 F.3d at 1012. The ALJ did not point to specific evidence in the record that conflicts with Ms. Curran's opinion and failed to adequately explain his reasons for rejecting it. Thus, the ALJ's decision to reject the opinion of Plaintiff's treating medical provider was not supported by substantial evidence.

**V.     Analysis at Step Five**

Plaintiff claims the ALJ erred at step five by presenting an incomplete hypothetical—one that did not reflect all of Plaintiff's limitations—to the vocational expert ("VE"). But this claim

is redundant and derivative of Plaintiff's other four assignments of error. Plaintiff asserts that the hypothetical did not include all of Plaintiff's limitations because the ALJ did not credit all of her subjective symptom testimony and rejected the opinion of her treating medical provider. Because the Court finds the ALJ's decision to reject the opinion of Plaintiff's treating medical provider was not supported by substantial evidence, a specific finding that the ALJ erred at step five is unnecessary. The Court only notes that because the hypothetical posed to the VE did not include the limitations specified in the treating provider's opinion, the ALJ's error in rejecting this opinion was not harmless.

In summary, the ALJ's findings at step two and step three and his decision to not fully credit Plaintiff's subjective symptoms testimony were supported by substantial evidence. But the ALJ erred in failing to adequately explain his reasons for rejecting the medical opinion of Plaintiff's treating medical provider. The error was not harmless because the limitations expressed by the provider were not included in the RFC or the hypothetical posed to the VE at step five.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for administrative proceedings.

IT IS SO ORDERED.

DATED:_____April 12, 2022_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge

19 – OPINION & ORDER